DANIEL FRISCHBERG and
MICHELLE PEREZ,  No. 1:17-cv-4449 (NLH/KMW)

    Plaintiffs,  **OPINION**

v.

GLOBAL SERVICE GROUP, LLC,

    Defendant.

**APPEARANCES:**

ANDREW M. MILZ
CARY L. FLITTER
FLITTER MILZ, P.C.
525 ROUTE 73 SOUTH
SUITE 200
MARLTON, NJ 08053-9644
    On behalf of Plaintiffs

JODY THOMAS LOPEZ-JACOBS
FLITTER MILZ, P.C.
450 N. NARBERTH AVE.
SUITE 101
NARBERTH, PA 19072
    On behalf of Plaintiffs

No appearances were entered on behalf of Defendant

**HILLMAN**, District Judge

    Pending before the Court is Plaintiffs Daniel Frischberg and Michelle Perez's Motion for Default Judgment against Defendant Global Service Group, LLC. For the reasons that follow, the Motion for Default Judgment will be granted.

However, the Court will defer its determination on attorneys' fees and entering Judgment in this matter for the reasons detailed below.

## I. Essential Facts

Plaintiffs' June 19, 2017 Complaint pleads as follows. Defendant is a company which assists other companies in managing and collecting overdue accounts. Plaintiffs, brother and sister, each own a cellphone. Within the last four years, Defendant began placing calls to Plaintiffs' cellphones. Plaintiffs never had any account with Defendants. These calls were made using an automated telephone dialing system or artificial or prerecorded voice. During these calls, Defendants indicated they were calling to collect an alleged pay day loan. However, Plaintiffs have no liability for any such debt. Plaintiffs plead Defendant knew Plaintiffs had no such liability.

Plaintiffs separately instructed Defendant that they had no liability for the debt and that Defendant was not to call their cellphones. Nonetheless, Defendant continued to make calls. Plaintiffs never consented to these calls. One of the voicemails Frischberg received stated, in its entirety: "Hello, this is Beth from Global Services, please call me back at 888-240-0182 regarding a personal matter. Thank you." Defendant did not otherwise identify itself during this call or others.

Defendant made at least fifteen calls to Frischberg and at least fifteen calls to Perez.

## II. Procedural Posture

Plaintiffs filed a Complaint with this Court on June 19, 2017. The Complaint asserts three counts: (1) violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(1)(A)(iii), (2) violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e(11), and (3) invasion of privacy.

On June 29, 2017, the Court received an Affidavit of Service providing that Defendant was served on June 23, 2017. On August 18, 2017, Plaintiffs requested an entry of default against Defendant. Default was entered on November 3, 2017. On November 30, 2017, Plaintiffs filed a Motion for Entry of Default Judgment.

## III. Subject Matter Jurisdiction

The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over this matter, as Plaintiffs bring claims under two federal statutes: the TCPA and the FDCPA.

## IV. Standard for Default Judgment

"Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing

Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and we repeatedly state our preference that cases be disposed of on the merits whenever practicable.'" Id. (quoting Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984)).

"Although the Court should accept as true the well-pleaded allegations of the Complaint, the Court need not accept the moving party's legal conclusions or allegations relating to the amount of damages." Id. at 535-36 (citing Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). "Consequently, before granting a default judgment, the Court must first ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" Id. at 536 (quoting Asher, 2006 WL 680533, at *1).

Once a valid claim has been asserted, "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing United States

4

v. $55,518.85 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)).

## V. Analysis

Before assessing the factors that control whether default judgment should be granted, the Court must determine whether Plaintiffs have asserted a legitimate cause of action.

### A. TCPA Violations

"[T]o state a cause of action under the TCPA, a plaintiff must allege: '(1) that the defendant called the plaintiff's cellular telephone; (2) using an [automatic telephone dialing system]; (3) without the plaintiff's prior express consent.'" Todd v. Citibank, No. 16-5204, 2017 U.S. Dist. LEXIS 63402, at *15-16 (D.N.J. Apr. 26, 2017) (quoting Leon v. Target Corp., No. 15-01, 2015 U.S. Dist. LEXIS 34490 (M.D. Pa. Mar. 19, 2015)).

Plaintiffs clearly plead Defendant called their cellphones. They further plead that "[a]t no time did [Defendant] have consent to call Plaintiffs' cellular phones." As to the use of an automatic telephone dialing system, Plaintiffs plead "Defendants called Plaintiffs' cellular telephones using an automated telephone dialing system or artificial or prerecorded voice." An allegation "merely stating a defendant used an ATDS or 'an artificial or prerecorded voice' is insufficient to state a TCPA claim." Id. at *16. However, "courts permit the allegation of an automatic system to be pled on information or

5

belief, but require additional factual information, such as the absence of a relationship between the parties and the random nature of the automation device." Norman v. Sito Mobile Sols., No. 17-2215, 2017 U.S. Dist. LEXIS 52889, at *6 (D.N.J. Apr. 6, 2017).

Plaintiffs plead they have never had an account with Defendant and have never heard of Defendant. Plaintiffs further plead they have no liability for the pay day loan. Plaintiffs allege at least fifteen calls each over a four-year period. This indicates to the Court both a lack of a business relationship and that Plaintiffs were randomly selected. The Court finds a legitimate cause of action under the TCPA.

### B. FDCPA Violations

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014).

Plaintiffs identify themselves as "consumers" in their Complaint and Defendant as a "debt collector pursuant to the FDCPA." The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C.

§ 1692a(3). The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Id. § 1692a(6). The Court finds the Complaint sufficiently pleads Plaintiffs are consumers and Defendant is a debt collector.

The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money . . . [is] primarily for personal, family, or household purposes." Id. § 1692a(5). Plaintiffs' Complaint identifies the purported loan as a "pay day loan." The Complaint does not allege that the loan was purportedly used for "personal, family, or household purposes." Nonetheless, "one can reasonably infer from the nature of a payday loan that it was used for 'personal, family, or household purposes.'" Aurandt v. Brown, No. 15-275, 2017 U.S. Dist. LEXIS 48725, at *23 (W.D. Pa. Mar. 31, 2017).

Plaintiffs claim a violation of the FDCPA under 15 U.S.C. § 1692e(11), which states a violation for "[t]he failure to disclose in the . . . initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the

7

failure to disclose in subsequent communications that the communication is from a debt collector." Plaintiffs have identified that, in at least one call to Frischberg, it was not disclosed that the call was from a debt collector. Plaintiffs otherwise allege that "Defendants indicated they were calling to collect an alleged pay day loan" during the calls and that Defendant "did not properly or completely identify themselves during each of its calls." The Court assumes in deciding this motion that Plaintiffs' allegations are true: While at some point Defendants identified they were attempting to collect a debt, they failed to identify themselves as a debt collector. The Court finds Plaintiffs have sufficiently pleaded a violation of the FDCPA.

**C. Whether Default Judgment Is Appropriate**

Finding Plaintiffs have pleaded legitimate causes of action under the TCPA and the FDCPA, the Court moves to the factor test governing motions for default judgment. Considering the second two factors – whether there is a litigable defense and whether the defendant's delay is due to culpable conduct – the Court finds that because Defendant was properly served but failed to appear in this action, it is unknown whether Defendant has a meritorious defense to Plaintiffs' claims, and the inference is that Defendant's default was the result of culpable conduct.

As to the first factor – prejudice to Plaintiffs if default

judgment is denied – "[a] plaintiff will be prejudiced absent a default judgment where, due to the defendant's continued failure to respond to plaintiff's claims, the plaintiff is left with no other recourse." Cyprus Mines Corp. v. M & R Indus., Inc., No. 14-4590, 2015 WL 1469529, at *8 (D.N.J. Mar. 30, 2015). The Court finds Plaintiffs will be prejudiced if default judgment is not entered against Defendant.

**VI. Damages**

Plaintiffs' Complaint seeks $500 in damages (or actual damages if greater) for each violation of the TCPA. Plaintiffs' Complaint also seeks statutory and actual damages under the FDCPA. In its moving brief, while Plaintiffs' request for $1,000 in statutory damages under the FDCPA is the same, Plaintiffs also seek treble damages for all of the calls after the initial call under the TCPA, alleging they were willful and knowing.

Plaintiffs' brief states Plaintiffs seek only statutory damages for the TCPA and FDCPA violations.[1]

**A. Damages under the TCPA**

Under the TCPA, a plaintiff is entitled "to receive $500 in damages for each . . . violation." 47 U.S.C. § 227(b)(3)(B).

---

[1] They further state that their invasion of privacy claim is subsumed within their statutory claims.

Further, "[i]f the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." Id. § 227(b)(3).

Plaintiffs plead Defendant made the calls "intentionally, willfully, and knowingly." Plaintiffs plead they each separately instructed Defendant "that they had no liability for the debt and that [Defendant] may not call their cell phones." They allege that, despite this, Defendant continued to call them. They allege fifteen calls were made over a four-year period. Regardless of whether this is sufficient to show willful conduct, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Plaintiffs did not request treble damages in their Complaint. The Court, therefore, will not award treble damages. See, e.g., Drew v. Lexington Consumer Advocacy, No. 16-200, 2016 U.S. Dist. LEXIS 188997, at *27 (N.D. Cal. Aug. 11, 2016) (stating, in a report and recommendation, that "the court recommends against treble damages . . . [because the plaintiff] did not seek treble damages in the [complaint]"); Marina B Creation S.A. v. De Maurier, 685 F. Supp. 910, 912 (S.D.N.Y. 1988) ("No demand for treble damages is made. Thus,

this Court will not increase damages beyond what was originally sought.").

The Court will award $500 per violation of the TCPA. The Court takes the allegation that each Plaintiff received fifteen calls as true and will award $7,500 to each Plaintiff for the TCPA violations.

**B. Damages under the FDCPA**

The FDCPA provides, in addition to any actual damages, for "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A).

> In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors –
>
> (1) in any individual action under subsection a(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional . . . .

Id. § 1692k(b)(1).

"Whether statutory damages should be granted, and if so, whether the full amount of $1,000 should be allowed, is committed to the discretion of the court." Manopla v. Bryant, Hodge & Assocs., LLC, No. 13-338, 2014 U.S. Dist. LEXIS 24554, at *16 (D.N.J. 2014). "In exercising that discretion, courts look to the nature of the violation. If the violation is especially egregious, or if plaintiffs show that it was repeated

11

and persistent, courts are more likely to award the full amount." Id. at *16-17. "When, however, the violation is shown to be technical in nature and infrequent, courts have exercised their discretion to deny or reduce statutory damages." Id. at *17. "Actual damages are not required in order for a plaintiff to recover statutory damages under the FDCPA." Id. at *18.

Plaintiffs plead fifteen calls over a four-year period. The Court finds this to be persistent, but not particularly frequent when spread out across that time frame. Plaintiffs sufficiently plead intentional conduct, as both Plaintiffs informed Defendant they had no liability for the debt and told Defendant to stop calling. The Court concludes that a statutory damage award of $750 per Plaintiff is appropriate.[2]

**C. Attorneys' Fees and Costs**

Plaintiffs also ask for attorneys' fees and costs under the FDCPA. "Section 1692k(a)(3) allows a prevailing party to recover 'the costs of the action, together with a reasonable attorney's fee as determined by the court.'" Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991). The Third Circuit has explained that "attorney's fees should not be construed as a

---

[2] The Court notes that, unlike the TCPA, the FDCPA does not allow a statutory damage award of up to $1000 per violation. "15 U.S.C. § 1692k(a)(2)(A) is best read as limiting statutory damages to $1,000 per successful court action." Goodmann v. People's Bank, 209 F. App'x 111, 114 (3d Cir. 2006).

12

special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." Id. Thus, "in a typical case under the Act, the court should determine what constitutes a reasonable fee." Id. at 114. "Among the factors the court may consider in determining the appropriate amount of the fee is the degree of success obtained by the prevailing plaintiff; if the plaintiff has only partial or limited success, a reduction in the award of attorney's fees may be appropriate." Id. "The Court should also assess the reasonableness of the hours expended by counsel for the prevailing party." Id. "Only in unusual circumstances, however, may the court decline to award a fee; in such circumstances, it should formulate particularized findings of fact and conclusions of law explaining its decision." Id.

> The starting point for calculating a prevailing party's attorney's fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." This is the lodestar. The court must determine whether the attorney's hourly rate is appropriate given the attorney's "skill, experience, and reputation." The prevailing party must establish "with satisfactory evidence, in addition to the attorney's own affidavits, that the requested rates are in line with those prevailing in the community" for similar work by lawyers of comparable qualifications.

Ford v. Consigned Debts & Collections, Inc., No. 09-3102, 2010 U.S. Dist. LEXIS 135385, at *22-23 (D.N.J. Dec. 21, 2010) (first

13

quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); then quoting Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001); and then quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).

Plaintiffs seek $8,091 in attorneys' fees and $453.91 in costs. Plaintiffs calculate attorney Andrew Milz's lodestar at $375 per hour for 13.4 hours; attorney Jody Thomas Lopez-Jacob's lodestar at $240 per hour for 12.1 hours; and $180 per hour for 0.9 hours of work performed by legal assistant Joan Raughley. Milz submitted a Certification explaining the basis for the hourly rates. The Court finds no reason to doubt counsels' qualifications and billing rates, and the Court's independent review of the requested rates finds them appropriate for the attorneys' level of experience, this type of action, and the geographical area where the Court sits.

With regard to hours expended, "it is necessary that the Court 'go line, by line, by line' through the billing records supporting the fee request." Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 362 (3d Cir. 2001). However, in the documentation supporting Plaintiffs' fee request, several descriptions of the work performed are redacted. These redactions prevent the Court from determining whether the hours expended on this matter are reasonable. The Court will require Plaintiffs to file an unredacted version of Exhibit 1 to Milz's

14

Certification, under temporary seal, along with a Motion to Seal. The Court will thereafter determine the appropriate amount of attorneys' fees to be awarded in this case.

### VII. Conclusion

The Court finds Plaintiffs have pleaded a legitimate cause of action under the TCPA and the FDCPA and that all three factors support granting Plaintiffs' Motion for Default Judgment. The Court finds each Plaintiff entitled to $8,250 in damages: $7,500 under the TCPA and $750 under the FDCPA. The Court will award attorneys' fees but defers its decision as to the amount to be awarded. Accordingly, the Court will not enter final judgment at this time. An Order consistent with this Opinion will be entered.


Date:  July 18, 2018                     s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.